[Civ. No. 16745.   Second Dist., Div. Three.   Mar. 14, 1949.]

Estate of LUELLA J. DOLSEN, Deceased.   RAY DOLSEN, as Executor, etc., Appellant, v. PEARL A. DOLSEN, as Executrix, etc., Respondent.

L. E. Dadmun and J. M. Ray for Appellant.

Randles & Randles for Respondent.

SHINN, P. J.—Luella J. Dolsen died in 1940, survived by three sons, Fred, Ray and Frank. She left a will by which she devised the home in which she had resided for many years to the three sons and appointed Ray Dolsen executor. Other property, if any, was given to the sons in equal shares. Frank died after the death of his mother. He left a will naming his wife, Pearl A. Dolsen as executrix. Some seven years after the death of Luella, Ray filed his first account current as executor and Pearl, as executrix, filed exceptions. Ray also filed a petition to determine heirship. The two matters were heard together. The court surcharged Ray's account in the amount of $2,173.07 as rent for the occupation of a portion of the dwelling house after the death of his mother. It was also determined that the three sons took the home place under the will in equal shares and as tenants in common. Ray Dolsen appeals from both orders.

The entire controversy turns upon the construction to be given to the provisions of the will with respect to the real property. Ray contends that the three brothers were devised a life estate with remainder to the survivors or survivor, and that upon the death of Frank his interest passed to Ray and Fred. Pearl contends that the estate of Frank owns a one-third interest in the real estate.

The provisions of the will to be considered are the following:
"*Second*: I declare that the Court Street property of which I am possessed is my separate property, and I hereby devise this property to my sons, Fred, Ray and Frank Dolsen, share and share alike. If any of them shall predecease me, I devise such share or shares equally to my remaining son or sons. . . .

"*Fourth*: In the event of the decease of one or two of my sons, the survivor or survivors shall receive the share or shares of such decedents in the remainder or equal portions, as the case may be. . . .

"*Sixth:* I here remember my grandson, Richard Danner, but do not feel that I can make any gift or bequest to him. To other persons who would be entitled to share in my estate through intestate succession, I hereby leave the sum of one dollar to each such claimant." By the eighth paragraph the residuary estate was left to the three sons in equal shares.

The argument of respondent is centered upon the fourth paragraph, and she discusses it as if it contained the only provision for survivorship. She contends that it should be construed under the rule of section 122, Probate Code, which reads as follows: "Words in a will referring to death or survivorship, simply, relate to the time of the testator's death, unless possession is actually postponed, when they must be referred to the time of possession." She argues that the fourth paragraph refers to death or survivorship, *simply*, and that the words must be deemed to relate to the time of the testatrix' death and not to the event of the death of any of the sons after the death of testatrix, and hence were not effective to create a life estate. The argument would be sound if we were called upon to construe only the fourth paragraph. But there are two provisions for survivorship, and they must be read together in order to determine whether testatrix expressed a purpose contrary to that which would be imputed to her through the application of section 122. If it appears that Mrs. Dolsen intended to provide for survivorship in the contingency of the death of one or more of the sons after her death, as well as in the event one or more predeceased her, section 122 has no application.

It appears from even a casual reading of the second and fourth paragraphs that Mrs. Dolsen intended to provide for survivorship in two contingencies, namely, the death of one or more of the sons prior to her death, and the death of one or more of them after her death. Her intentions as to the first contingency were fully expressed in the second paragraph, and it strikes one rather forcibly that if she had not intended to provide for survivorship after her death, she would not have written the fourth paragraph of the will. She surely would not have intended the fourth paragraph to mean the same as the second. ■ One does not intentionally express the same testamentary purpose in separate paragraphs of a will, either in the same or in different language. The fourth paragraph is in broad general terms, whereas the second is specific. If testatrix did not intend to accomplish the same thing by the fourth paragraph as was accomplished by the second, she must, of course, have had a different purpose. If she has expressed two purposes in the two provisions for survivorship, it is our duty to give effect to both. Her intentions are controlling. (Prob. Code, § 101.) Every expression should be given some effect. (Prob. Code, § 102.) Under the construction urged by respondent, the second and fourth paragraphs would

have the same meaning and one or the other would be redundant and of no force or effect. This result is to be avoided in construing the will. Unless the fourth paragraph is treated as superfluous, it must be deemed to make provision for survivorship in the event of the death of one or more of the sons after the death of testatrix.

It is clear throughout the will that Mrs. Dolsen had wishes with respect to the real property which differed from those which pertained to any other property she might leave. She desired the home place to remain in the ownership of the sons. If any should predecease her their heirs, excepting the surviving brother or brothers were to be excluded. She had a grandson (whether he was an heir does not appear) and she intentionally omitted any provision for him. And with relation to her intentions it may be asked why, when she desired that the heirs of any of the sons who might predecease her should take no share of the real property, should she have been indifferent to their coming in as heirs of a son who might survive her? Some light is cast upon her intentions by the use she had made of the property. The house was built in 1885; Ray and his wife had resided with testatrix and looked after her for more than forty years. It had evidently been the Dolsen home for an even longer period. The house had 15 rooms; it had fallen into a sad state of decay. Termites had taken virtual possession of the house from cellar to garret. Dry rot also spread throughout the building. A large section of the rear upper story had fallen away, timbers had disappeared, floor boards gave way when stepped on, much of the place was unlivable, Ray had twice replaced the underpinning to prevent the collapse of the whole structure and yet it was the home of the Dolsens and they stayed on. Whether this was because of sentimental attachment to the old place, or because they had no other place to go is unimportant. The same considerations might well have influenced Mrs. Dolsen to make provisions for its use as a home for the sons as long as they had need for it. Whatever else she might own was to go to them outright, but not the home. In both the second and fourth paragraphs she expressed this wish. It would seem to have been the main purpose in making the will, aside from the appointment of Ray as executor. As already mentioned it does not appear whether there were other heirs. We conclude that the order of the trial court declaring that the three sons took under the will as tenants in common is contrary to the expressed intentions of the testatrix.

The views we have expressed find support in the use of the word "remainder" in the fourth paragraph. In its non-technical use the word means what remains after a part has been taken away, and as used in the will it could only mean the interest that would come to a survivor in case of death, and which would be lost to the son or sons who might die first. The word was not used in the second paragraph, but only in the fourth, where its use would be appropriate and meaningful only if it was the intention to create a life estate. We hold, therefore, that it was the intention of testatrix by the fourth paragraph to provide for survivorship in case of the death of one or more of the sons after her death, just as she had made similar provision in the event one or two of the sons predeceased her. The provisions of paragraph four created a life estate in the sons. (16 Cal.Jur., § 2, p. 366.)

"A clear and distinct devise ... cannot be affected ... by any other words not equally clear and distinct." (Prob. Code, § 104.) This rule is relied upon by respondent in support of the trial court's construction of the will. We think its requirements have been fully met. ▇ The provisions of a will are clear and distinct when they will admit of only one reasonable interpretation. Such is the case here. ▇ It is not necessary that the fourth paragraph, alone, should have clearly disclosed the intention of testatrix to create a life estate in the three sons, with rights of survivorship. It is sufficient if it clearly appears from the will as a whole that she has expressed that purpose.

The order requiring Ray to account to the estate for the rental value of the rooms he occupied also must be reversed. He had accounted for the rent received from other tenants and had never claimed the right to exclusive possession of the premises. Fred. filed no exceptions to the account. He evidently understands that as long as he has not been excluded from the premises, Ray, his cotenant, has had the right to live in them, rent free. (7 Cal.Jur., § 32, p. 364.)

The orders appealed from are reversed.

Wood, J., and Vallée, J., concurred.